IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| WILLIAM A., the Student, By and Through his Parents E.A. and C.A., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 3:23-cv-01110 ) Judge Aleta A. Trauger ) |
| CLARKSVILLE-MONTGOMERY COUNTY SCHOOLS, | ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM

Before the court is the plaintiff's Motion in Limine on "Disability" and Denial of Reasonable Accommodation of Reading Intervention Under Section 504 and Title II of the Americans with Disabilities Act ("Motion") (Doc. No. 22). The defendant has filed a Response in opposition (Doc. No. 27), and the plaintiff has filed a Reply (Doc. No. 28). For the reasons set forth herein, the Motion will be granted in part and denied in part.

### I. BACKGROUND

Recitations of the facts and procedural history of a separate but closely related action concerning the same parties and events appear in two Memoranda by this court[1] and in a Sixth Circuit opinion. *William A. ex rel. E.A. v. Clarksville-Montgomery Cnty. Sch. Sys.*, 127 F.4th 656

---

[1] *W.A. v. Clarksville/Montgomery Cnty. Sch. Sys.*, No. 3:23-cv-00912, 2024 WL 2702436 (M.D. Tenn. May 24, 2024), *aff'd sub nom. William A. ex. rel. E.A. v. Clarksville-Montgomery Cnty. Sch. Sys.*, 127 F.4th 656 (6th Cir. 2025); *William A. v. Clarksville/Montgomery Cnty. Sch. Sys.*, No. 3:23-cv-00912, 2025 WL 1160071 (M.D. Tenn. Apr. 21, 2025).

(6th Cir. 2025). In brief, plaintiff William[2] was a student of defendant Clarksville-Montgomery County Schools (the "school").[3] "William graduated from high school without being able to read or even to spell his own name." *Id.* at 660. While William was still in high school, his parents filed an administrative complaint under the Individuals with Disabilities Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, in which they argued that, despite his delayed eleventh-grade dyslexia diagnosis, his individualized education program was not sufficiently updated to address his dyslexia. *Id.* at 658–60. An administrative law judge ("ALJ") held a due process hearing and found that the school had not provided William a "free and appropriate public education," which the IDEA requires, and ordered the school to provide him 888 hours of compensatory dyslexia tutoring. *Id.* at 658–59. The ALJ also found that the school had violated the Americans with Disabilities Act and the Rehabilitation Act. *Id.* William then brought an action in this court (Case No. 3:23-cv-00912) solely under the IDEA, seeking an order that the tutoring be delivered by William's choice of tutor. The school counterclaimed, seeking reversal of the relief ordered by the ALJ, and both parties moved for judgment on the administrative record. *Id.* at 659. This court ordered the same compensatory education relief as the ALJ, and the Sixth Circuit affirmed. *Id.* at 659–60. The plaintiff then moved to amend the compensatory education order, and this court denied that relief. *William A.*, 2025 WL 1160071, at *8.

---

[2] The court follows the plaintiff's lead and will uncharacteristically refer to William by his first name.

[3] There are several stylistic differences between this action and the related action that bear mentioning to avoid confusion. In the related action, the defendant's name was stylized as Clarksville/Montgomery County School *System*, and William's name was alternately styled as "William A." and "W.A." Thus, when this court quotes from the related action, sometimes the defendant's name is abbreviated as "CMCSS" and the plaintiff's as "W.A." Furthermore, in the related action's underlying administrative proceeding, the ALJ referred to William and his parents as plaintiffs. Thus, this Memorandum includes quotations that refer to "plaintiffs," even though, in this case, this court refers only to one plaintiff—William.

In this action, filed a few months after the IDEA case in 2023, William brought claims under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 *et seq.* ("ADA") and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504") (Doc. No. 1 ("Complaint") ¶¶ 31–47), and the Fourteenth Amendment's equal protection and substantive due process clauses (*id.* ¶¶ 48–59). He seeks declaratory, injunctive, and compensatory relief, as well as costs and fees. (*Id.* ¶¶ 61–65). Trial is set to begin August 26, 2025. (Doc. No. 16 at 1.)

## II.  DISCUSSION

In his Motion, the plaintiff asserts that the issues of, first, "whether William has a 'disability' . . . and [second,] whether the school district denied him dyslexia-specific interventions from appropriately trained staff" have been "decided conclusively" such that the defendant must be barred from relitigating these issues. (Doc. No. 22 at 2, 6.) More specifically, he asserts that issue preclusion bars relitigation of these issues. (*Id.* at 5–7.)

### A.  The issue of disability

The defendant admits in its Answer that "William[] has a disability under the ADA and [Rehabilitation Act] § 504." (Doc. No. 11 ¶ 6.) Further, in its Response, the defendant "agrees that it is unnecessary to relitigate this particular issue." (Doc. No. 27 at 2 (citing Doc. No. 11 ¶ 6).) Thus, the court construes as unopposed the Motion's request that the court preclude the defendant from relitigating the issue of whether William has a disability under the ADA and Section 504 and will grant the Motion in this respect.

### B.  The issue of whether the defendant denied William the necessary services or accommodation to learn to read

The Complaint alleges that "CMCSS violated the ADA and Section 504 by denying William," among other things, "the reasonable accommodation of dyslexia-specific interventions by appropriately trained staff." (Complaint ¶ 39.) In his Motion, the plaintiff argues that "whether

3

the school district denied him dyslexia-specific interventions from appropriately trained staff" "is not triable" because that issue "ha[s] been decided conclusively already." (Doc. No. 22 at 2 (emphasis removed).) In addition, the plaintiff states, "the violations of the ADA and [Section] 504 have already been proven." (*Id.* at 3 (citing Final Order, No. 3:32-cv-00912, (M.D. Tenn. Dec. 18, 2023), ECF No. 18-3 at 133, A.R. Vol. 1 at 433 ("Final Order"[4])).)

Indeed, the plaintiff is correct that the ALJ found "that CMCSS violated Section 504 and the ADA," in part, because the school "could (and was required to) have accommodated W.A.'s dyslexia, the needed accommodations were not unreasonable, and what CMCSS provided was not reasonable." (Final Order at 433.) In the IDEA case, the school challenged the ALJ's jurisdiction to decide the ADA and Section 504 claims, but this court rejected that argument. *W.A.*, 2024 WL 2702436, at *11–12 (citing *P.G. ex rel. A.G. v. Genesis Learning Centers*, No. 3:19-cv-00288, 2019 WL 3231363 at *7 (M.D. Tenn. July 18, 2019)). However, importantly, this court stated:

> CMCSS has expressed a concern that the ALJ's holdings regarding the ADA and Section 504 might be cited as a basis for granting the plaintiffs non-IDEA damages in a separate case stating claims under those statutes, but the fact that the ALJ had jurisdiction to consider those claims, in the limited context of ensuring adequate 20 U.S.C. § 1415(*l*) exhaustion, does not necessarily mean that any merits determination by the ALJ would be binding on a federal court. The court, therefore, stresses that it makes no holding regarding the preclusive effect, if any, of the ALJ's rulings regarding non-IDEA claims.

*Id.* at *12. The plaintiff now argues that, under the doctrine of issue preclusion, the court should not allow the parties at trial to relitigate "[w]hether CMCSS denied William dyslexia-specific interventions for basic reading skills with a trained teacher," the issue having "been decided now four times in William's favor." (Doc. No. 22 at 6 (emphasis removed).) The court pauses to

---

[4] For ease of reference, the court will refer to the ALJ's Final Order by the pagination assigned to it in the related action's Administrative Record.

determine the source of the preclusive effect the plaintiff claims, about which he equivocates, before turning to further analysis.

### 1. The source of preclusive effect

In his Motion, the plaintiff argues that "whether the school district denied him dyslexia-specific interventions from appropriately trained staff" "is not triable" because that issue "ha[s] been decided conclusively already." (*Id.* at 2 (emphasis removed).) This is because, the plaintiff argues, the ALJ determined that the school did not provide reasonable accommodation for William's dyslexia and therefore violated Section 504 and the ADA. (*Id.* at 3 (citing Final Order at 433).)

However, the plaintiff is unclear about which of the ALJ's findings he seeks to have preclusive effect. On the one hand, as the court has discussed, the plaintiff focuses on the ALJ's findings in his discussion of the ADA and Section 504 claims. But the plaintiff also refers to the ALJ's order of 888 hours of compensatory education under the IDEA, and the court decisions agreeing with that finding, as the relevant finding that deserves preclusive effect. (*See id.* at 6–7 ("[T]hese IDEA findings were central to William's assertion in this case: denial of 'reasonable accommodation of *dyslexia-specific interventions* by appropriately trained staff.'" (citing Complaint ¶¶ 34–35; and quoting *id.* ¶ 39)).) It is therefore initially unclear which of the ALJ's findings the plaintiff argues should get preclusive effect.

Second, while the plaintiff first argues that it is the ALJ's findings that deserve preclusive effect, the plaintiff then appears to argue that this court's and the Sixth Circuit's findings also deserve preclusive effect. The plaintiff first notes that courts often give preclusive effect to the findings of state administrative proceedings. (Doc. No. 22 at 5 (citing *B&B Hardware, Inc. v. Hargis Indus.*, 575 U.S. 138, 148 (2015)).) But then the plaintiff adds, "[a]ccordingly, the ALJ's decision, *as well as the District Court and Sixth Circuit's decision*[*s*], can create issue preclusion."

(*Id.* (emphasis added).) And, the plaintiff notes, "[w]hether CMCSS denied William dyslexia-specific interventions for basic reading skills with a trained teacher has been decided now *four* times in William's favor." (*Id.* at 6.) To wit, "[the school] has received a full and fair opportunity—a multi-day evidentiary hearing with appeals through the District Court and the Sixth Circuit." (*Id.* at 7.) Thus, while the plaintiff seems to base his issue preclusion argument on the ALJ's findings as to the non-IDEA claims, he could also be arguing that this court's own findings, and the Sixth Circuit's, have preclusive effect.

The defendant does not interpret the Motion as arguing that this court's or the Sixth Circuit's findings have preclusive effect, makes no responsive argument on that point, and characterizes the plaintiff's position as being that only the ALJ's findings have preclusive effect. (*See* Doc. No. 27 ("[T]he [ALJ's] Final Order does not have preclusive effect on the issues presented in this case." (capitalizations removed)).) In his Reply brief, the plaintiff finally clarifies his position:

> [William] does not contend that the ALJ's *IDEA-FAPE ruling* creates legal liability to preclude the Defendant from litigating the denial of reasonable accommodation claim under the ADA/504. Quite the opposite, he contends that the ALJ's *ADA/504 denial of reasonable accommodation ruling* precludes the Defendant from relitigating the denial of reasonable accommodation under the ADA/504.
>
> . . . [T]he ALJ had jurisdiction over W.A.'s ADA/504 claim of denial of reasonable accommodation claim, and decided it fully and fairly. *That* ruling may not be relitigated, not the IDEA-FAPE ruling.
>
> . . . It is the independent ADA and 504 ruling by the ALJ that precludes the re-litigation of the identical ADA and 504 issue.

(Doc. No. 28 at 3–4 (footnote omitted) (emphasis in original).) The plaintiff makes no further point about the possible preclusive effect of the related action's judicial decisions. Thus, the court construes the plaintiff's position to be that the preclusive effect he claims derives solely from the ALJ's ADA and Section 504 determination. While the plaintiff could have argued that this court's

6

previous findings have preclusive effect, or that the ALJ's IDEA findings have preclusive effect, the court will not develop a line of argument the plaintiff mentions and then abandons, if not disclaims. *Accord McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (quoting *Citizens Awareness Network, Inc. v. U.S. Nuclear Regul. Comm'n*, 59 F.3d 284, 294 (1st Cir. 1995) (alteration in *Citizens Awareness*))).

  2.  Preclusion

  The Supreme Court considered the preclusive effect of state administrative proceedings in *University of Tennessee v. Elliott*: "when a state agency [1] 'acting in a judicial capacity . . . [2] resolves disputed issues of fact properly before it [3] which the parties have had an adequate opportunity to litigate,' [4] federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." 478 U.S. 788, 799 (1986) (quoting *United States v. Utah Constr. & Mining Co.* 384 U.S. 394, 422 (1966)); *accord Smith v. Perkins Bd. of Educ.*, 708 F.3d 821, 826 (6th Cir. 2013) ("In general, the findings of state administrative agencies are given preclusive effect by the federal courts." (citing *Elliot*, 478 U.S. at 779)).

  To assess whether collateral estoppel applies, the court must ask, among other questions, "would the decision have preclusive effect under [state] law[?]" *Smith v. City of Inkster*, 644 F. App'x 602, 609 (6th Cir. 2016) (quoting *Nelson v. Jefferson Cnty.*, 863 F.2d 18, 19 (6th Cir. 1988) (alteration in *Smith*)); *see also Peterson v. Johnson*, 714 F.3d 905, 914 (6th Cir. 2013) (following *Elliot* and applying Michigan agency issue preclusion law to determine whether an unreviewed[5]

---

[5] In this context, "unreviewed" means "that no *state* court has reviewed [the administrative findings]." *Hillman v. Shelby Cnty. Gov't*, 297 F. App'x 450, 450 (6th Cir. 2008) (explaining the holding in *Elliot*) (emphasis added).

factual determination by a state administrative agency would receive preclusive effect in state court). Assuming without deciding that the first three prongs of *Elliot*'s test are satisfied, the court considers Tennessee preclusion law. *Accord Peterson*, 714 F.3d at 913 ("That brings us to the last *Elliott* criterion, which provides that if the prior three are satisfied, then we must give the agency's finding of fact the same preclusive effect it would be given in state courts.").

Under Tennessee law, "for the doctrine of collateral estoppel to apply, the issue . . . must . . . have been necessary to the judgment." *Mullins v. State*, 294 S.W.3d 529, 535 (Tenn. 2009) (citations omitted); *see also Clark v. Sputniks, LLC*, 368 S.W.3d 431, 437 (Tenn. 2012) ("The doctrine of collateral estoppel . . . is generally held to be applicable only when . . . the determination of such issue in the former action was necessary to the judgment." (quoting *Home Ins. Co. v. Leinart*, 698 S.W.2d 335, 336 (Tenn. 1985)). In addition, "[t]he party asserting the doctrine of collateral estoppel in seeking to bar the relitigation of an issue has the burden to prove that resolving the issue was necessary to the prior judgment." *In re Piercy*, 21 F.4th 909, 920 (6th Cir. 2021) (citing *Dickerson v. Godfrey*, 825 S.W.2d 692, 695 (Tenn. 1992)).

The ALJ's finding, under the ADA and Section 504, that William was not provided reasonable accommodation, was not necessary to the outcome of the administrative due process hearing, which was an order of compensatory education under the IDEA. *Cf. K. K.-M. v. Gloucester City Bd. of Educ.*, No. 19-15808 (RBK/KMW), 2020 WL 5015485, at *4 (D.N.J. Aug. 25, 2020) (holding that the ALJ's finding that the plaintiffs could seek compensatory relief for the school district's actions after they moved out of district was not essential to her judgment denying compensatory education); *Fones v. Comm'r of Soc. Sec. Admin.*, No. CV-23-1227-PHX-GMS (JFM), 2024 WL 1542285, at *5 (D. Ariz. Mar. 6, 2024) (holding that the ALJ's determination of

8

disability before the date of an application was not essential to a decision because it did not affect the award of benefits), *R. & R. adopted*, 2024 WL 1533685 (D. Ariz. Apr. 9, 2024).

The plaintiff states that the "IDEA findings were central to William's assertion in this case." (Doc. No. 22 at 7.) That may well be the case, but the plaintiff relies, as he forcefully states, not on the IDEA findings, but on the ALJ's ADA and Section 504 findings. (*See* Doc. No. 28 at 3.) The plaintiff did not state, let alone show, that the ALJ's ADA and Section 504 findings were necessary to the outcome of the due process hearing. Nor could he. Therefore, the court finds that issue preclusion does not apply to the ALJ's ADA and Section 504 findings, which are the only sources of preclusive effect the plaintiff cites and the only rationale for his Motion.

In addition to moving that the defendant be prevented from relitigating the issue of whether the school denied William dyslexia-specific interventions, William gestures at an argument that relitigation of the ALJ's finding that "CMCSS violated Section 504 and ADA" be given preclusive effect under the doctrine of claim preclusion (*res judicata*), which "bars subsequent causes of action when a court of competent jurisdiction already has rendered a final decision on the merits involving the same parties and claims in a prior action." *Consolidation Coal Co. v. Maynes*, 739 F.3d 323, 327 (6th Cir. 2014). Without stating the elements of a failure to accommodate claim, the plaintiff appears to argue that the court should find as a matter of law that the defendant violated Section 504 and the ADA.

The plaintiff argues that the court needs no further proof to find the defendant liable: "the injunctive relief claim requires no extra proof beyond the IDEA claims," and, "even for the damages claim, CMCSS may not relitigate whether it knew of the need [for accommodation] and failed to meet it (deliberate indifference)." (Doc. 28 at 8–9 (citations omitted) (capitalizations removed); *see also id.* at 4 ("There is nothing 'extra' to prove in federal court for the injunctive

relief claim [under the ADA and Section 504].").) Moreover, the plaintiff states, "the violations of the ADA and [Section] 504 have already been proven." (Doc. No. 22 at 3 (citing Final Order at 433.)

The argument that the ALJ's findings have claim preclusive effect is not made explicit and, in any case, would have been more appropriate in a motion for summary judgment. Dispositive motions were due March 28, 2025 (Doc. No. 15 at 4), which was several months before the plaintiff filed this Motion. "[M]otions in limine are meant to deal with discrete evidentiary issues related to trial, and are not another excuse to file dispositive motions disguised as motions in limine." *Heavenly Hands Physical Therapy, LLC v. Allstate Fire & Cas. Ins. Co.*, No. 23-CV-10602, 2024 WL 5510328, at *1 (E.D. Mich. Sept. 11, 2024) (quoting *Dunn ex rel. Albery v. State Farm Mut. Auto. Ins. Co.*, 264 F.R.D. 266, 274 (E.D. Mich. 2009)). To the extent the plaintiff argues that the ALJ's finding that the school violated Section 504 and the ADA deserves claim preclusive effect, the court is not persuaded.

## III.   CONCLUSION

For the foregoing reasons, the plaintiff's Motion will be granted with respect to the issue of whether William has a disability and otherwise denied.[6]

An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge

---

[6] The parties discuss at some length a recent Supreme Court decision, *A.J.T. ex rel. A.T. v. Osseo Area Schs., Indep. Sch. Dist. No. 279*, 145 S. Ct. 1647 (2025). (*See* Doc. No. 22 at 3–4, 8–9; Doc. No. 27 at 7–8; Doc. No. 28 at 4.) The Court held that "ADA and Rehabilitation Act claims based on educational services should be subject to the same standards that apply in other disability discrimination contexts." *A.J.T.*, 145 S. Ct. at 1655. That is, such claims may no longer be subject to a heightened standard requiring plaintiffs to show the school's "bad faith or gross misjudgment." *Id.* The parties have not persuaded the court that their analyses of *A.J.T.* should affect the pending Motion.

11